IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM GLEASON, ET AL.,          :
                                  :
          Plaintiffs,             :          CIVIL ACTION
                                  :          NO. 11-CV-6273
v.                                :
                                  :
EAST NORRITON TOWNSHIP, ET AL., :
                                  :
          Defendants.             :

**MEMORANDUM AND ORDER**

**Joyner, C.J.**                               **July 24, 2012**

     Before this Court are the Motion to Dismiss filed by
Defendants Pasquale, Cafrey, Warner, Ladson and East Norriton
Township (Doc. No. 5), the Motion to Dismiss filed by Defendant
Potera (Doc. No. 6), and Plaintiffs' Responses in opposition
thereto (Doc. Nos. 7 and 9). For the reasons set forth in this
Memorandum, the Motions to Dismiss are granted in part and denied
in part.

**FACTUAL BACKGROUND**

     Plaintiff William Gleason owned and operated Aamco
Transmissions (aka Dannicole, LLC). In or around September 2009,
Lillian Foreman's minivan was towed to Aamco for transmission
repairs at her request. Plaintiff agreed to fix the minivan using
parts he had previously purchased and kept in stock at his

1

garage. While fixing the vehicle, Plaintiff stored the vehicle at the garage, charging fifty dollars per day for storage over a period of thirty days. Based on the costs of parts, labor, and storage, Plaintiff acquired a property interest under Pennsylvania law in the form of a repairman's lien and therefore was entitled to hold the vehicle as collateral pending payment by the minivan's owner. The alleged value of the lien was $3,009.33.

On October 5, 2009, Defendants East Norriton Police Officers (Warner, Ladson, Carfrey, and their sergeant, Pasquale) (hereinafter collectively "East Norriton Officers") arrived at the Aamco station and, despite the outstanding debt and without compensation for the work already performed, demanded that Plaintiff relinquish the minivan to Palmer Ringcomp, an individual who was allegedly not the registered owner. Plaintiff protested the officers' demand, explaining his legal right to maintain possession of the vehicle pending payment of the owner's debt. The police officers then called Defendant Montgomery County Assistant District Attorney Potere from Plaintiff's garage. ADA Potere advised the officers to arrest Plaintiff, seize the vehicle, and deliver it to Mr. Ringcomp. Plaintiff was charged with unlawful taking and receiving stolen property. He later pled guilty to disorderly conduct to "avoid the time, expense, and embarrassment that would result from a prolonged criminal prosecution." Compl. at ¶ 26.

Plaintiff claims that as a result of the arrest, he suffered intense emotional distress that led him to believe he was having a heart attack. Though Plaintiff does not specify when, at some point, he was transported to the Montgomery Hospital Emergency Room for evaluation and treatment. As a result, he incurred $4,646.90 in medical bills.

Plaintiff has brought this civil action alleging deprivation of his constitutional rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment by the East Norriton Township, its officers and ADA Potere. In addition to his various Section 1983 claims, Plaintiff alleges Pennsylvania state law claims for intentional interference with contractual relations and conversion. Both pending Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) address the same complaint and include largely the same legal arguments, and as such we consider them together.

## STANDARD OF REVIEW

The standard of review for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss requires that the "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d

224, 233 (3d Cir. 2008). "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ P. 8(a)(2). Claimants must plead enough facts to demonstrate that their claim is facially plausible; "[t]hreadbare recitals" of the elements of the claim and "mere conclusory statements" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements and that a claim to relief is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

**DISCUSSION**

**I. Claims under Section 1983 Against Defendants East Norriton Officers and ADA Potere**

**(A) *First Amendment Retaliation***

Plaintiff argues that he was arrested and prosecuted in retaliation for "peacefully asserting his right to hold the vehicle." Compl. at ¶¶ 43-45. In order to sustain a claim for First Amendment retaliation under § 1983, a plaintiff must demonstrate: (1) that plaintiff engaged in constitutionally

4

protected speech; (2) that the government retaliated in such a way as to cause a person of ordinary firmness to curtail the exercise of his or her First Amendment rights; and (3) that there is a causal connection between the retaliatory behavior of the government and the protected speech. Ashton v. City of Uniontown, 459 Fed. Appx. 185, 187 (3d Cir. 2012) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

However, Plaintiff's claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that when a judgment in favor of a § 1983 claim would call into question the validity of an outstanding criminal conviction, the claim must be dismissed as not cognizable. Id. at 486-87. Regardless of Plaintiff's reasons for pleading guilty to disorderly conduct, considering his § 1983 claim for First Amendment retaliation would require this Court to determine whether his conduct towards the Defendant officers was constitutionally protected speech. Such a determination would "necessarily impugn the validity of his underlying conviction" for disorderly conduct. See Ashton, 459 Fed. Appx. at 188 (quoting Gilles v. Davis, 427 F.3d 197, 209 (3d Cir. 2005)). If successful, Plaintiff's claim would result in "parallel litigation" that "could result in a conflicting resolution arising from the same conduct." Gilles, 427 F.3d at 209. Accordingly, we dismiss Plaintiff's claim of First Amendment retaliation.

**(B) *Malicious Prosecution***

To succeed in a § 1983 claim for malicious prosecution, Plaintiff must demonstrate that the challenged criminal proceeding terminated in his favor. Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996) (citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)). Plaintiff pled guilty to disorderly conduct to avoid the expense and time of a trial on more serious charges.

Normally, the abandonment of charges by the prosecutor is sufficient to establish a favorable termination for the accused. Taylor v. Winters, 115 Fed. Appx. 549, 552 (3d Cir. 2004) (citing Haefner, 626 A.2d at 521). However, "a prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim." Hilfirty, 91 F.3d at 580. A dismissal of charges resulting from an agreement between the accused and the prosecutor "is not an indication that the accused is actually innocent of the crimes charged." Id. A favorable termination "must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the law suit." Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009) (quoting 52 Am. Jur. 2d *Malicious Prosecution* § 32 (Supp. 2007)). Accordingly, we dismiss Plaintiff's claim for malicious prosecution.

**(C) Deprivation of Property Without Due Process**

A § 1983 claim for deprivation of property without due process requires the plaintiff to establish that: (1) through state action; (2) plaintiff has been deprived of a constitutionally protected property interest; (3) without adequate process as required by the Fourteenth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).[1]

Before depriving an individual of his or her property, due process generally requires that the government provide the individual with prior notice and an opportunity to be heard. Fuentes v. Shevin, 407 U.S. 67, 81 (1972). The right to be heard protects an individual's "possession of property from arbitrary encroachment . . . a danger that is especially great when the State seized goods simply upon the application of and for the benefit of a private party." Id. "Prior notice is not, however, absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures." Abbot v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (citing Mitchell v. W.T. Grant Co., 416 U.S. 600, 611 (1974)).

Defendants contend that Plaintiff's claim fails because he

---

[1] The parties do not dispute that Defendants were state actors and that Plaintiff had a constitutionally protected property interest in the vehicle through a repairmen's lien. See Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1934) (a mortgage lien is property protected by the Fifth Amendment); Armstrong v. United States, 364 U.S. 40, 48 (1960) (holding that a materialmen's lien is property protected by the Fifth Amendment). Thus, we simply address whether adequate process was available to Plaintiff and whether Defendants deprived him of it.

had an adequate post-seizure process available under Pa.R.Crim.P. 588 and has failed to avail himself of that remedy. Pa.R.Crim.P. 588(A) provides:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

When police seize property pursuant to an investigation, "courts have consistently held that Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy." Willard v. Pa. Soc'y for the Prevention of Cruelty to Animals, No. 11-04543, 2012 WL 1392657, at *6 (E.D. Pa. April 23, 2012); see also Welsch v. Twp. Of Upper Darby, No. 07-4578, 2008 WL 3919354 (E.D. Pa. Aug. 26, 2006); Taylor v. Naylor, No. 04-1826, 2006 WL 1134940 (W.D.Pa. Apr. 26, 2006); Marsh v. Ladd, No. 03-5977, 2004 WL 2441088 (E.D. Pa. Oct. 27, 2004); Potts v. City of Phila., 224 F.Supp.2d 919, 938 (E.D. Pa. 2002). However, "a hearing must be had before one is *finally* deprived of his property." Mitchell, 416 U.S. at 611 (emphasis added). We have been unable to find – and the Defendants have not cited to – any cases in which Pa.R.Crim.P. 588 was properly invoked after police handed seized property over to another party.

Pennsylvania law does provide an adequate process for disputing property possession pursuant to an asserted lien. When

8

a lien is asserted, the "actual owner" of the property may
acquire possession of the property by either: (1) paying the
amount of the lien and then suing for any alleged damages; or (2)
by bringing an action of replevin, requesting a writ of seizure,
and posting a bond sufficient to secure the value of the lien.
Aircraft Repair Services Stambaugh's Air Service, Inc., 175 F.3d
314, 318 (3d Cir. 1999). The repairman then loses the right to
possess the property pending the final outcome of the action but
is entitled to a hearing within seventy-two hours of the seizure.
Pa.R.Civ.P. 1075.2. In the present case, by seizing the vehicle
in question and summarily handing it over to a third party,
Defendants circumvented this process and thereby rendered its
procedural safeguards unavailable to Plaintiff.

At this stage in the litigation, based on the facts alleged
in the complaint, Plaintiff appears to have suffered a
deprivation of his due process rights similar to the
constitutional violation recognized by the Third Circuit in Abbot
v. Latshaw, 164 F.3d 141 (3d Cir. 1998). In Abbot, police
officers injected themselves into a private property dispute
between a divorced husband and wife over the ownership of a van.
Id. at 143. The ex-husband had maintained possession of the van,
but the registration was in the ex-wife's name. Id. at 144. The
officers joined the ex-wife in confronting the ex-husband and

9

demanding that he relinquish possession of the van without any type of court order. Id. at 149.

Noting the holding in Fuentes, the Third Circuit reasoned that it is not the job of police officers to determine "who is entitled to possession of property" and that the officers' "curbside courtroom" was exactly the type of deprivation the Fourteenth Amendment is designed to protect against. Id.[2] The police cannot use their authority to facilitate the repossession of property where a court has not heard and resolved the parties' dispute. Id.

According to the present Complaint, Defendants seized the vehicle in which the Plaintiff had a protected property interest without a court order and without providing Plaintiff the opportunity for a hearing. In doing so, the Defendants circumvented the appropriate Pennsylvania civil procedures that serve to protect a lien holder's property interests. Moreover, because Defendants immediately transferred possession of the vehicle to the alleged lawful owner, Pa.R.Crim.P. 588 was not

_____

[2] Furthermore, courts have found that when police – pursuant to a criminal investigation of stolen goods – seize property in which the possessor claims a lien interest, the holder of the lien is entitled to notice and a hearing before the property is returned to the alleged lawful owner. See, e.g., Sanders v. City of San Diego, 93 F.3d 1423 (9th Cir. 1996); Winters v. Board of County Comm'rs, 4 F.3d 848 (10th Cir. 1993); Florida Pawnbrokers and Secondhand Dealers Ass'n, Inc. v. Fort Lauderdale, 699 F. Supp. 888 (S.D. Fla. 1988).

available to him. Therefore, we deny the Defendants' Motions to
Dismiss as to Count I of the Complaint.[3]

**(D) Conspiracy**

In order to bring a claim for civil conspiracy under § 1983,
a plaintiff must show that: (1) two or more individuals; (2)
acting "under color of law"; (3) reached an agreement to deprive
the plaintiff of a constitutional right. Parkway Garage Inc., 5
F.3d 685, 700 (3d Cir. 1993) (citing Adickes v. S. H. Kress &
Co., 398 U.S. 144, 150 91970). In pleading a conspiracy under §

---

[3] Plaintiff also alleged a substantive due process violation in his Complaint,
but failed to argue its merits in response to Defendants' Motions. However, we
wish to clarify that Plaintiff has not stated a claim for the deprivation of
his substantive due process rights. "The text of the Fourteenth Amendment
speaks of 'property' without qualification, and it is well-settled that state-
created property interests, including some contract rights, are entitled to
protection under the procedural component of the Due Process Clause. However,
'not all property interests worthy of procedural due process protection are
protected by the concept of substantive due process." Nicholas v. Pennsylvania
State Univ., 227 F.3d 133, 140 (3d Cir. 2000) (internal citations and
quotations omitted). A property interest falls within the ambit of substantive
due process protection only if it is "fundamental" under the United States
Constitution. Wrench Transportation Systems, Inc. v. Bradley, 340 Fed. Appx.
812, 815 (3d Cir. 2009); McCarthy v. Darman, 2009 U.S. Dist. LEXIS 53747 at 11
(E.D. Pa. June 24, 2009).  The Third Circuit has found that there can be a
fundamental interest in real property ownership, but has not extended non-
legislative substantive due process protection to "other, less fundamental
property interests." Nicholas, 227 F.3d at 141. See, e.g., Connection Training
Servs. v. City of Phila., 358 Fed. Appx. 315, 320 (3d Cir. 2009), Wrench
Transportation Systems, 340 Fed. Appx. at 816 (refusing to extend substantive
due process protection to plaintiff's personal property interest in trucks
that he owned). Plaintiff's property interest in the form of a repairman's
lien under Pennsylvania law cannot be deemed "fundamental." In arriving at
this conclusion, we are particularly mindful that both the Supreme Court and
the Third Circuit have "always been reluctant to expand the concept of
substantive due process because guideposts for responsible decisionmaking in
this unchartered area are scarce and open-ended." Armbruster v. Cavanaugh, 410
Fed. Appx. 564, 567 (3d Cir. 2011)(quoting Collins v. Harker Heights, 503 U.S.
115, 125 (1992)); Albright v. Oliver, 510 U.S. 266, 272 (1994).

1983, the plaintiff must allege facts sufficient to infer that a conspiratorial agreement existed. <u>Great Western Mining & Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 176-177 (3d Cir. 2010). An "allegation of parallel conduct" will not suffice and mere conclusory allegations are not enough <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). Rather, the plaintiff must make a showing that there was a "meeting of the minds" between the Defendants. <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 205 (3d Cir. 2008) (quoting <u>Adickes v. S. H. Kress & Co.,</u> 398 U.S. 144, 158 (1970)).

The factual allegations in Plaintiff's complaint do not give rise to a plausible claim for conspiracy. Plaintiff alleges that the Defendant officers called Defendant ADA Potere from his garage and that Defendant Potere advised them that they should arrest him. Defendant then makes the conclusory allegation that Defendants "took overt steps and acts in furtherance of that conspiracy." Compl. at ¶ at 54. At the pleading stage, a plaintiff alleging conspiracy must make factual allegations —"not merely consistent with" an illegal agreement – but sufficient to infer the plausibility of such an agreement. <u>Twombly</u>, 550 U.S. at 557. The mere fact that the Defendant officers called Defendant ADA Potere for legal advice and then relied on the advice given does not suggest a conspiratorial agreement to deprive Plaintiff of his constitutional rights. Rather this is the sort of

"allegation of parallel conduct" that <u>Twombly</u> held was insufficient to plead a conspiracy. Accordingly, we dismiss Plaintiff's conspiracy claim.

### (E) Bystander Liability

A plaintiff can bring a § 1983 claim against a police officer under the theory of bystander liability by demonstrating that the officer: (1) "knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." <u>Fernandors v. District of Columbia</u>, 382 F.Supp. 2d 63, 72 (D.D.C. 2005); <u>see also</u> <u>Randall v. Prince George's County</u>, 302 F.3d 188, 203-204 (2d Cir. 2002). Bystander liability is not reserved only for police officers, but can be used to hold a prosecutor liable when one fails to intervene to prevent the deprivation of a person's constitutional rights. <u>Wilkinson v. Ellis</u>, 484 F.Supp. 1072, 1085 (E.D. Pa. 1980) (holding that as a "quasi-judicial officer" prosecutor had a duty to intervene when suspect was being beaten by the police).

Bystander liability is not a "distinct claim," but a theory through which an "otherwise passive defendant" may be held liable for a constitutional violation. <u>Jackson v. Mills</u>, No. Civ.A. 96-3751, 1997 WL 570905, at *5 (E.D. Pa. Sept. 4, 1997). Because bystander liability does not encompass a separate claim and Plaintiff has asserted claims against all present East Norriton

13

Officers and ADA Potere for deprivation of property without due process, it is unnecessary for us at this time to address its application in this case.

**(F) *Supervisory Liability***

The Third Circuit has acknowledged that <u>Iqbal</u> calls into question whether a viable claim for supervisory liability under § 1983 could ever be sustained. <u>Santiago v. Warminster</u>, 629 F.3d 121, 130 (3d Cir. 2010); <u>see also</u> <u>Bayer v. Monroe</u>, 577 F.3d 186, 190 n.5 (3d Cir. 2009); <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1194 (10th Cir. 2010); <u>Parrish v. Ball</u>, 594 F.3d 993, 1001 (8th Cir. 2010). In <u>Ashcroft v. Iqbal</u>, the Supreme Court found that under a § 1983 claim, supervisor liability is a "misnomer" because supervisors cannot be held liable for the constitutional violations of their subordinates. <u>Iqbal</u>, 556 U.S. at 677. Therefore, "absent vicarious liability, each Government official. . . is only liable for his or her own misconduct." <u>Id</u>.

To the extent that supervisory liability remains a viable theory of liability under § 1983, it is not necessary for us to address its applicability to the case at this time. Plaintiff has sufficiently alleged facts to maintain Sergeant Pasquale as a defendant in this suit based on his presence at the garage and his active participation in the deprivation of Plaintiff's property interests without due process.

14

*(G) Absolute Prosecutorial Immunity*_____

ADA Potere maintains that, as a prosecutor, she is absolutely immune from this civil action. Whether a prosecutor is protected by absolute immunity is determined through an analysis of the functional nature of the challenged actions. Carter v. City of Philadelphia, 181 F.3d 339, 355-56 (3d Cir. 1999). Absolute immunity "attaches only to actions performed in a quasi-judicial role" and a prosecutor bears the burden of demonstrating that the function of the challenged action justifies absolute immunity. Id. (internal quotations omitted). Absolute immunity protects prosecutors in their roles as "advocate[s] for the State" but does not extend to administrative or investigative functions and therefore does not protect a prosecutor's legal advice to the police. Burns v. Reed, 500 U.S. 478, 493 (1991); see also Wrench Trans. Systems Inc. v. Bradley, 212 Fed.Appx. 92, 99 (3rd Cir. 2006). Where absolute immunity is inappropriate, qualified immunity is sufficient because it provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns, 500 U.S. at 495; see also Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008).

Here, Defendant ADA Potere has failed to meet the "heavy burden of establishing entitlement to absolute immunity." Odd, 538 F.3d at 207 (internal quotations omitted). Plaintiff's complaint alleges that the East Norriton officers contacted ADA

Potere in order to solicit legal advice on how to proceed after
learning of Plaintiff's property interest in the vehicle.
Absolute immunity does not extend to ADA Potere's legal advice to
the East Norriton officers and as such we deny the Motion to
Dismiss on absolute immunity grounds.

**(H) *Qualified Immunity***

We turn now to whether the East Norriton Officers and ADA
Potere are entitled to qualified immunity. Government actors are
immune from liability for discretionary conduct as long as that
conduct does not violate any "clearly established statutory or
constitutional rights of which a reasonable person would have
known." Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011)
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because
immunity is not merely a defense, but is intended to bar
frivolous claims prior to discovery, the Supreme Court has
emphasized that its applicability should be determined at the
"earliest possible stage in litigation." Hunter v. Bryant, 502
U.S. 224, 227 (1991). Determining whether this qualified immunity
applies in a particular case entails a two-part analysis. Lamont,
637 F.3d at 182 (citing Saucier v. Katz, 533 U.S. 201-202
(2001)). The court should determine: (1) whether the actor has
violated a statutory or constitutional right and (2) whether that
right was clearly established in the law. Id. This analysis is a
flexible one and courts may use their discretion in determining

16

on which prong to begin their analysis. <u>Pearson v. Callahan</u>, 555 U.S. 223, 239 (2009). Thus, a court is free to find qualified immunity if Plaintiff has not pled the violation of a protected right *or* that right is not clearly established in the law such that a reasonable person would be aware of it. <u>Id</u>.

The Third Circuit has held that a police officer's reliance on a prosecutor's legal advice is a "thumb on the scale" in favor of finding qualified immunity. <u>Kelly v. Carlisle</u>, 622 F.3d 248, 255 (3d Cir. 2010). While the Third Circuit recognized the value in encouraging the police to seek the advice of a prosecutor, the court stopped short of finding that reliance on a prosecutor's advice is "per se objectively reasonable." <u>Id</u>. Thus, where the law is so clearly established that a reasonable officer would not rely on a prosecutor's advice, qualified immunity should not apply. <u>Id</u>. at 256.

In <u>Abbot v. Latshaw</u>, the Third Circuit found that "reasonable police officers should know from the established precedent of <u>Fuentes</u> that their role is not to be participants in property deprivations without notice and an opportunity to be heard. 164 F.3d at 149. This is true even when police officers act on a reasonable belief that property doesn't belong to the person in possession of it. <u>See id.</u> at 148-149. "[A]t the heart of <u>Fuentes</u>" is the principle that it is the role of the courts

17

and not police officers to determine who is entitled to possession of property. Id.

In this case, the Plaintiff has sufficiently alleged a potential claim of deprivation of property without due process under the Fourteenth Amendment. In the absence of a clear record of what actually occurred in the course of the seizure and Plaintiff's arrest, we must deny the request for dismissal on the basis of qualified immunity at this time.

## II. Monell Claim Against East Norriton Township

Plaintiff alleges that East Norriton Township has maintained a custom of failing to properly train, supervise, and discipline its officers in regards to the proper procedures for seizing property and resolving property disputes.

A municipality may be found liable where the unconstitutional action "implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Municipal liability can be found where the unconstitutional action is the result of either an official policy or "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. (citation omitted); see also Santiago, 629 F.3d at 135. A municipality's failure to properly train its employees may be the basis for § 1983 liability where

18

it amounts to a "deliberate indifference" to the rights of those affected. Blakeslee v. Clinton County, 336 Fed. Appx. 248, 251 (3d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

Plaintiff has pled sufficient facts to make out a plausible Monell claim that – at least for the purposes of a motion to dismiss – must be allowed to go forward. Plaintiff's factual support for the Monell claim is thin, but not unusually so for a case at this early stage in the proceedings. See, e.g., Oswald v. Gibbons, Civ. No. 10-6093, 2011 WL 2135619, at *5 (E.D. Pa. May 31, 2011). It is reasonable to infer that Plaintiff was deprived of his property interest without due process as a result of East Norriton Township's continued failure to properly train its officers in handling seizures and property disputes. Accordingly, we deny East Norriton Township's Motion to Dismiss Plaintiff's § 1983 claim for municipal liability.

## III. State Law Claims

Plaintiff has pled facts sufficient to make out a claim for conversion under Pennsylvania state law. See Sterling v. Redevelopment Auth. Of Phila., No. 10-2406, 2011 WL 6210679, at *14 (E.D. Pa. Dec. 13, 2011) (citing Stevenson v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)). Additionally, Plaintiff has pled sufficient facts to meet the elements of intentional interference with contractual relations under Pennsylvania state

19

law. <u>See</u> <u>Rapid Circuits, Inc. v. Sun Nat'l Bank</u>, No. 10-6401, 2011 WL 1666919, at *6 (E.D. Pa. May 3, 2011) (citing <u>Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania</u>, 7 A.3d 278, 288-89 (Pa. Super. Ct. 2010)). Accordingly, we deny Defendants' Motions to Dismiss the state law claims.

**CONCLUSION**

For the aforementioned reasons, Defendants' Motions to Dismiss shall be granted in part and denied in part. An order follows.